UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FIDELITY NATIONAL FINANCIAL, INC., et al.,

        Plaintiffs,

v.

SCOTT BESSENT, et al.,

        Defendants.

_____/

Case No. 3:25-cv-00554-WWB-SJH

## **DEFENDANTS' RESPONSES TO PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECCOMENDATION**

Defendants hereby respond to Plaintiffs' Objections (ECF 85) to the Magistrate Judge's Report and Recommendation on the Parties' cross-motions for summary judgment (ECF 82, hereafter the "Report").

In the Report, the magistrate rightly concluded that FinCEN's Residential Real Estate Reporting Rule was statutorily authorized by the Bank Secrecy Act (BSA); that it was the product of reasoned decision-making by FinCEN; and that, in light of this reasonableness, the rule did not violate the First and Fourth Amendments in the manners alleged by Plaintiffs. The magistrate thus appropriately recommended that summary judgment be granted to Defendants.

None of Plaintiffs' objections to these conclusions should be sustained.[1] Most of their objections are improper because they only reframe arguments

---

[1] Plaintiffs do not challenge the Report's rejection of their First Amendment claim.

already made and considered by the magistrate judge—indeed, several of the objections are near-verbatim recitations of Plaintiffs' briefs—or are simply flat, unadorned disagreements with the Report's conclusions. At times, the objections even misconstrue the Report—apparently deliberately—to make it seem less reasonable than it is.

Contrary to Plaintiffs' unsupported objections, the Report reflects a careful, thorough, and correct analysis of the issues presented in the briefs and reflected in an extensive record.[2]  Plaintiffs' objections do nothing to bring the Report's conclusions into legitimate question. Plaintiffs' objections thus should be overruled, and the Report should be adopted in full.

## LEGAL STANDARDS

Plaintiffs' and Defendants' summary judgment motions are case-dispositive and, therefore, the magistrate's recommendation with respect to these motions is subject to *de novo* review. See 28 U.S.C. § 636 (b)(1)(B); Fed. R. Civ. P. 72(b). That said, a court need not consider all objections to a report, as not all objections are proper. "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F. 2d 1536, 1548 (11th Cir. 1988). Moreover, "parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R." *Hall v. Sargeant*, No. 18-CV-80748, 2018 WL 6019221, at

---

[2] By the time of the Report, the record included over ten thousand pages of administrative record (ECF 19) and well over a hundred pages of substantive filings by both parties and an amicus. See ECF 31, 35, 45-1, 64, 71, 72, 75, 78, 77. The Report was also based on roughly six hours of oral argument before the magistrate. See ECF 81.

*1 (S.D. Fla. Nov. 16, 2018) (internal citations omitted).  Thus, "a party's objections are improper if they expand upon and reframe arguments already made and considered by the magistrate judge or simply disagree with the magistrate judge's conclusions."  *United States v. Ibanez-Molina*, 759 F.Supp.3d 1272, 1282 (S.D. Fla. 2024).

"When the objecting party has not properly objected to the magistrate judge's findings, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Sepulveda v. City of Doral,* No. 1:21-cv-23267-KMM, 2024 WL 3886116, *2 (S.D. Fla. Aug. 21, 2024).

## ARGUMENT IN OPPOSITION

### I.  The Report properly explains how the BSA's plain language authorizes the Rule's requirements.

The Report correctly concluded that the Rule's reporting requirements were authorized by 31 U.S.C. 5318(g)(1) and (5) of the BSA because the transactions covered by the Rule—certain non-financed transfers of residential real estate to legal entities and trusts—were categorically "suspicious."  By cherry-picking language from the Report, Plaintiffs misleadingly suggest that the Report's only basis for this conclusion is that some of these transactions are not currently subject to regulatory safeguards—*i.e.*, that "any transaction not otherwise subject to federal monitoring is automatically 'suspicious.'" ECF 85 at 1 *citing* ECF 82 at 27.

That is not at all what the Report says.  Rather, the Report explains, this lack of federal monitoring of the covered transactions—and the "individual anonymity" provided by entities and trusts—can be and has "been exploited by

3

illicit actors of all varieties," as demonstrated by, *e.g.*, "regular feedback from law enforcement," "representative examples of money laundering in transactions that would be subject to the Rule," and numerous other sources cited in the Rule and reflected in the administrative record. ECF 82 at 26-29.

Thus, contrary to Plaintiffs' objections, the Report does not conclude that every unmonitored financial transaction is "suspicious" under the BSA, only that the narrow category of real estate transactions covered by the Rule are suspicious given the unique money laundering risks they present.[3]

In their objections, Plaintiffs also repeat their prior argument that reporting can only be required under 31 U.S.C. § 5318(g)(1) and (g)(5) if a financial institution itself determines that a particular transaction is suspicious, again citing clearly inapposite caselaw and FinCEN regulations governing other types of transactions. As the Report notes, however, Plaintiffs have expressly conceded that the BSA allows FinCEN to adopt categorical reporting requirements regarding suspicious transactions, ECF 82 at n. 11 *citing* ECF 35 at 10, and the Rule explained why FinCEN opted for a more categorical approach given recent BSA

---

[3] Plaintiffs similarly misread the Report as suggesting that effectively any transaction can be "suspicious" under the BSA because any transaction "might" have some potential to be used for illicit purposes. ECF 85 at 3 *citing* ECF 82 at 25. But the Report is simply distinguishing between "suspicious" and actually illegal transactions—*i.e.*, a "suspicious" transaction is one there are legitimate reasons to conclude "might" be illegal, not one that necessarily is in fact illegal. *See* ECF 82 at 17-18, 25. Nothing in the Report remotely suggests that all transactions that could conceivably be misused are "suspicious" under the BSA: the Report merely concludes that transactions categorically presenting unique risk factors for misuse, such as those covered by the Rule, are suspicious.

4

changes favoring streamlined reporting and the greater difficulty real estate personnel may have individually identifying suspicious transactions. Given that Plaintiffs' objection merely reargues their position, Plaintiffs' objection is improper, and Defendants rely on their prior argument on this point. *See, e.g.*, ECF 64 at 8-11; ECF 75 at 2-5; Merits Hr'g Tr. 22-27.[4]

Similarly, the Report concluded that BSA provision 31 U.S.C. § 5318(a)(2), though unnecessary to authorize the Rule given (g)(1) and (g)(5), provided further statutory support for it by separately allowing FinCEN to require reporting "to ensure compliance with [the BSA and associated regulations] or to guard against money laundering, the financing of terrorism, or other forms of illicit finance." ECF at 82 (quoting 31 U.S.C. § 5318(a)(2)). As Plaintiffs' objections to this conclusion again merely restate prior arguments fully considered by the magistrate, those objections are again improper, and Defendants rely on their prior responses to these arguments here. *See, e.g.*, ECF 64 at 11-13; ECF 75 at 6-7; Merits Hr'g Tr. 102-09.

Finally, Plaintiffs argue that FinCEN's authority to impose reporting requirements under 31 U.S.C. § 5318 is somehow limited by the provisions of another BSA section, 31 U.S.C. § 5326, which independently authorizes FinCEN to impose certain temporary reporting obligations on financial institutions in

---

[4] Plaintiffs cite a new, recent case, *Glover v. Ocwen Loan Servicing, LLC*, 127 F. 4th 1278 (11th Cir. 2025), but it has no bearing on the pertinent statutes or regulations. *Glover* concerned interpretation of the Fair Debt Collection Practices Act.

particular geographic areas through geographic targeting orders (GTOs).[5] As Plaintiffs conceded during oral argument, however, Congress independently granted FinCEN authority to impose permanent reporting obligations through regulations under § 5318 and temporary reporting obligations through GTOs under § 5326 at separate times and through separate statutes. *See* Merits Hr'g Tr. at 111-112. And Plaintiffs provide absolutely no reason to believe Congress intended the unique geographic and temporal limitations of GTOs to constrain FinCEN's general regulatory authority under § 5318: indeed, such an interpretation would prevent FinCEN from adopting any lasting or generally applicable regulations at all under § 5318.[6]

## II. The Report correctly determined that the Rule was adequately supported, sufficiently explained its benefits, and properly addressed comments.

Plaintiffs' objections under the Administrative Procedure Act (APA) also raise nothing new of significance. The Report's use of an "arbitrary and capricious" standard—rather than a "substantial evidence" standard—was correct, as Defendants have previously explained. *See* ECF 78 at 6-8; *see also* Merits Hr'g

---

[5] Plaintiffs did not clearly raise this contention before the magistrate, not mentioning it at all in their briefs and at most indirectly referencing it at oral argument. *See* Merits Hr'g Tr. at 10-11. The Court may disregard objections based on arguments not raised before the magistrate. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.").

[6] Plaintiffs also again briefly invoke the major questions doctrine, which, as Defendants have previously explained, has no relevance to this case. *See* ECF 64 at 11, n.4.

Tr. pp. 113-129.  Regardless, the Rule readily satisfies any conceivably applicable evidentiary standard under the APA.  As the Report discussed, the Rule's conclusions about the money laundering risks of the covered transactions and the need for regulation were legitimately supported by FinCEN's common sense, predictive judgment, and experience—all thoroughly explained in the Rule—as well as an extensive administrative record documenting these risks.  ECF 82 at 26-27.[7]

Given that Plaintiffs' objections on this issue otherwise simply improperly repackage their prior arguments, Defendants again rely on their own prior arguments as rebuttal.  *See, e.g.*, ECF 64 at 13-17; ECF 75 at 7-11.

Plaintiffs also mischaracterize the Report as allowing the Rule's costs to outweigh its benefits.[8]  The Report merely recognizes that the BSA did not require FinCEN to quantify the Rule's benefits or to show that such benefits outweigh the

---

[7] Plaintiffs now attack the Rule's reliance on certain suspicious activity report (SAR) data with extra-record evidence.  There has been no motion for the Court to take judicial notice of this extra-record material, however, and Plaintiffs cannot make the required showing of bad faith or improper behavior to support going beyond the administrative record.  *See Nat'l Mining Ass'n v. Dep't of Labor*, 812 F. 3d 843, 875 (11th Cir. 2016).  Regardless, Plaintiffs' selective use of this data gives a misleadingly incomplete picture of the use of SARs and their relevance to the Rule.  As the cited 2024 report itself notes, SARs are not only used by the Federal Bureau of Investigation in a significant percentage of its cases; SARs are also critical to investigations by the Internal Revenue Service-Criminal Investigations and Homeland Security Investigations, among countless other law enforcement and intelligence uses.

[8] Notably, Plaintiffs never specifically argued in their briefing that the Rule's quantified benefits must outweigh quantified costs of the Rule, only that the cost-benefit analysis was not rational because no dollar-value was assigned to the anticipated benefits.  *See* ECF 35 at 19-21.

7

Rule's quantified costs, as Plaintiffs largely conceded at oral argument. Merits Hr'g Tr. 172:10-17. The Report contains a thorough and well-reasoned analysis of this issue, and Plaintiffs' objection amounts to nothing more than a disagreement with the magistrate's decision. Thus, Defendants again rely on their prior briefs, which discuss the Rule's numerous benefits to law enforcement and related efforts and why FinCEN's inability to precisely quantify the monetary value of such benefits does not render the Rule unreasonable. *See* ECF 64 at 18-20; ECF 75 at 11-14.

Finally, the Report correctly concluded that FinCEN adequately responded to comments requesting that the Rule adopt a monetary threshold for its reporting requirements, explaining that FinCEN determined, based on its experience and discussions with law enforcement, that even low value real estate transactions present illicit finance risks and that exempting low value transactions would simply drive illegal activity into the lower-value end of the real estate market. ECF 82 at 41-42. Plaintiffs object that such experience and law enforcement information cannot adequately support the Rule's decision not to adopt a monetary threshold, but, as noted in the Report and Defendants' prior briefing, the APA clearly allows such reliance when that reliance is reasonably explained. Moreover, as Defendants have previously discussed, the administrative record also contains various other sources supporting the Rule's zero-dollar threshold. *See* ECF 64 at 23-24; *see also* Merits Hr'g Tr. at 157-160.

### III.  The Report correctly concluded that the Rule's reporting requirements are reasonable under the Fourth Amendment.

The Report properly concluded that the Rule was reasonable under the Fourth Amendment analysis required by *California Bankers Ass'n v. Shultz*, 416 U.S. 21 (1974), for such financial reporting requirements because it is "properly tailored to suspicious transactions relevant to possible violations of law and to guard against money laundering." ECF 82 at 43. In their objections, Plaintiffs again try to read requirements into *Shultz*'s reasonableness analysis that *Shultz* itself does not impose—as Defendants have explained in prior briefing, ECF 64 at 27-28; ECF 75 at 17—and apparently fault the Report for not imposing these purported requirements. The Report, however, clearly considered all relevant aspects of *Shultz*, including the language Plaintiffs cite, and thus Plaintiffs' objections should be rejected.[9]

---

[9] Plaintiffs also reference the recent Eleventh Circuit decision in *National Small Business United v. U.S. Dept. of the Treasury*, --- F.4th ---, 2025 WL 3637295 (11th Cir. Dec. 15, 2025), which is instructive here. In that case, the court concluded that the Corporate Transparency Act (CTA), which requires certain companies to report their beneficial ownership information to FinCEN, was reasonable under *Shultz* (despite being less tailored than the Rule). Plaintiffs attempt to distinguish this case on the ground that, in the CTA, Congress itself determined that such reporting was appropriate. The Eleventh Circuit did not rely on this congressional determination when reaching its Fourth Amendment decision, however. Rather, when upholding the CTA's requirements as reasonable under *Shultz*, the court instead emphasized that "[t]here is nothing arbitrary or discretionary about [the CTA's] application," "[t]he information it requires is sufficiently described and limited in nature and is no more detailed than the reports in *Shultz*," and it has "several privacy guarantees." *Id.* at *8*.

9

## **CONCLUSION**

Defendants respectfully request that the Court enter an order overruling Plaintiffs' objections and accepting the Report in full.

Dated: January 13, 2026            Respectfully submitted,

                                   GREGORY W. KEHOE
                                   United States Attorney

                                   */s/ Richard L. Lasseter*
                                   RONNIE S. CARTER
                                   Florida Bar No. 0948667
                                   KYESHA R. MAPP
                                   Florida Bar No. 0113006
                                   RICHARD L. LASSETER
                                   Florida Bar No. 0060365
                                   300 North Hogan Street, Suite 700
                                   Jacksonville, FL 32202-4270
                                   Telephone No. (904) 301-6324/6300
                                   Emails: Ronnie.Carter@usdoj.gov,
                                   Kyesha.Mapp@usdoj.gov,
                                   Richard.Lasseter@usdoj.gov
                                   *Attorneys for Defendants*