UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FIDELITY NATIONAL FINANCIAL, INC.
and FIDELITY NATIONAL TITLE
INSURANCE COMPANY,

            Plaintiffs,

v.                                Case No.: 3:25-cv-554-WWB-SJH

SECRETARY SCOTT BESSENT,
UNITED STATES DEPARTMENT OF
THE TREASURY, DIRECTOR ANDREA
GACKI and THE FINANCIAL CRIMES
ENFORCEMENT NETWORK,

            Defendants.
_____/

## ORDER

THIS CAUSE is before the Court on Plaintiffs' Motion for Summary Judgment (Doc. 35) and Defendants' Cross-Motion for Summary Judgment (Doc. 64). United States Magistrate Judge Samuel J. Horovitz issued a Report and Recommendation ("**R&R**," Doc. 82), in which he recommends denying Plaintiffs' Motion and granting Defendants' Cross-Motion. Plaintiffs filed Objections (Doc. 85), to which Defendants filed Responses (Doc. 89). For the reasons set forth below, Plaintiffs' Objections will be overruled, the R&R will be adopted, and Defendants' Cross-Motion will be granted.

**I.**      **BACKGROUND**

Plaintiffs object to a legal determination made within the background section of the R&R. (*See* Doc. 82 at 2 n.1). The Court will discuss that objection in turn. But as no party has objected to the relevant *factual* background as set forth in the R&R, (*see id.* at 2–10), the Court hereby adopts it as part of this Order.

## II.   LEGAL STANDARD

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1).  The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id.*  The district court must consider the record and factual issues independent of the magistrate judge's report, as de novo review is "essential to the constitutionality of [§] 636."  *Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 512 (11th Cir. 1990).  The objecting party must state with particularity findings with which it disagrees, along with its basis for the disagreement.  *Kohser v. Protective Life Corp.*, 649 F. App'x 774, 777 (11th Cir. 2016) (citing *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)).  The court will not consider "[f]rivolous, conclusive, or general objections."  *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988) (citation omitted).

## III.   DISCUSSION

In their Motion, Plaintiffs challenge the Financial Crimes Enforcement Network's ("**FinCEN**") Anti-Money Laundering Regulations for Residential Real Estate Transfers, 89 Fed. Reg. 70.258 (Aug. 24, 2024) (the "**Rule**"), on four grounds.  Plaintiffs argue that the rule (1) exceeds FinCEN's statutory authority under the Bank Secrecy Act ("**BSA**"), (2) is arbitrary and capricious in violation of the Administrative Procedure Act ("**APA**"), (3) violates the Fourth Amendment's prohibition on unreasonable searches, and (4) violates the First Amendment's prohibition on compelled speech.  (*See generally* Doc. 35).[1]

---

[1] In so doing, Plaintiffs abandoned Count V of their Complaint, (Doc. 1 at 56–59), which challenged the Rule on enumerated powers grounds.  *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).

Magistrate Judge Horovitz recommends finding that the Rule is statutorily authorized, not arbitrary and capricious, and not violative of the Fourth or First Amendments, and therefore recommends entering summary judgment in favor of Defendants.  Plaintiffs object to Judge Horovitz's first three findings but do not revive their compelled speech argument.  (*See generally* Doc. 85).  After an independent de novo review of the record, the Court agrees entirely with the analysis set forth in the R&R regarding Plaintiffs' First Amendment arguments and therefore Defendants' Cross-Motion will be granted as to that claim without further discussion.

Before proceeding, the Court notes that Plaintiffs' objections largely reiterate arguments presented in their summary judgment briefs.  This is improper, *e.g.*, *Grayson v. No Labels, Inc.*, No. 6:20-cv-1824, 2024 WL 863117, at *1 (M.D. Fla. Feb. 29, 2024), and the Court specifically warned against it, (Doc. 84 at 2).  Unsurprisingly, then, the Court does not require the benefit of oral argument to resolve Plaintiffs' objections.  (*See* Doc. 86).  And while the Court has thoroughly reviewed the record and Plaintiffs' arguments pertaining thereto, it will not accept Plaintiffs' invitation to expound on arguments that were presented to Magistrate Judge Horovitz and thoroughly addressed in the R&R.

### A. Statutory Authority

Plaintiffs argue that Magistrate Judge Horovitz too loosely interpreted the BSA's rulemaking authority under 31 U.S.C. §§ 5318(g)(1), (5).  Those provisions, he found, authorize rulemaking concerning the reporting of suspicious transactions relevant to a possible violation of law.  *Cf. id.*  Further finding that the class of transactions targeted by the Rule are sufficiently suspicious and relevant, he concluded that the Rule falls within FinCEN's statutory authority.  Plaintiffs, through several recycled arguments, generally

object to the R&R's approval of the Rule's categorical reporting requirements. Seemingly, they argue that § 5318(g)(1) grants FinCEN authority to compel the reporting of certain suspicious transactions, but only at the individual transaction level, and not as to a category of suspicious transactions. Subsection (g)(1) provides that "[t]he Secretary may require any financial institution . . . to report any suspicious transaction relevant to a possible violation of law or regulation," and Plaintiffs previously conceded that this language does not prohibit FinCEN from adopting categorical reporting requirements. (Doc. 35 at 10). The Court agrees to that end. It also agrees that, in subsection (g)(5), the BSA expressly directs the Secretary of the Treasury, through FinCEN, to "establish streamlined, including automated, processes to, as appropriate, permit the filing of noncomplex categories of reports" and to "establish standards to ensure that streamlined reports relate to suspicious transactions relevant to potential violations of law." 31 U.S.C. § 5318(g)(5)(D)(i)(I), (ii)(I). As Magistrate Judge Horovitz concluded, "[i]t would be incongruous to require streamlined processes for categories of reports, require the Secretary to ensure that such reports relate to suspicious transactions relevant to potential violations of law, and then to mandate that the requisite suspicion must be evaluated on an 'almost invariably' individualized basis as argued by Plaintiffs." (Doc. 82 at 20 n.13). And though Plaintiffs now seem inclined to retract their concession on the limits imposed by subsection (g)(1), their arguments on the scope of rulemaking authority afforded by the relevant provisions of § 5318 remain the same as those analyzed and rejected in the R&R. The Court agrees with that analysis and therefore declines to readdress Plaintiffs' interpretive objections with respect to subsections (g)(1) and (5) any further.

Magistrate Judge Horovitz concluded that § 5318(a)(2) also supported the Rule, at least to the extent that supplemental authority outside subsections (g)(1) and (5) was necessary. Section 5318(a)(2) authorizes the Secretary of the Treasury to

> require a class of domestic financial institutions or nonfinancial trades or businesses to maintain appropriate procedures, including the collection and reporting of certain information as the Secretary of the Treasury may prescribe by regulation, to ensure compliance with this subchapter and regulations prescribed under this subchapter or to guard against money laundering, the financing of terrorism, or other forms of illicit finance[.]

Plaintiffs contend that this language merely authorizes FinCEN to set procedures for complying with reporting requirements but provides no substantive authority for implementing the requirements themselves. Magistrate Judge Horovitz already addressed and rejected this and other recycled arguments pertaining to § 5318(a)(2). While the Court agrees that subsection (a)(2) supports the Rule, it will add that, according to its text, the compelled "reporting of certain information" is itself identified as a "procedure" authorized "to ensure compliance" with Title 31, Subtitle IV, Subchapter II. That is because the phrase "including the collection and reporting of certain information . . . ," is set off by commas as a dependent clause providing a parenthetical, non-exhaustive list of the "appropriate procedures" that subsection (a)(2) authorizes the Secretary to require. *See Sweet Additions Ingredient Processors, LLC v. Meelunie Am., Inc.*, 139 F.4th 1217, 1230 (11th Cir. 2025) (discussing nonrestrictive subordinate clauses); *Grange Ins. Co. v. Martin*, No. 3:23-cv-145, 2024 WL 4277836, at *7 (M.D. Ga. Sept. 24, 2024) (discussing nonrestrictive appositives). More straightforwardly, the provision authorizes the Secretary to "require a class of domestic financial institutions or nonfinancial trades or businesses to maintain appropriate procedures . . . to ensure compliance with this subchapter and regulations prescribed under this subchapter or to

5

guard against money laundering, the financing of terrorism, or other forms of illicit finance." 31 U.S.C. § 5318(a)(2). And appropriate "procedures" for ensuring compliance expressly "includ[e]," but are not limited to, "the collection and reporting of certain information as the Secretary of the Treasury may prescribe by regulation." *Id.*

Consistent with this reading, § 5318(a)(2) does more than provide supplemental support for the Rule, it independently authorizes the Rule. Plaintiffs protest, arguing that the R&R's interpretation of (a)(2) circumvents and renders superfluous (g)(1). As for circumvention, the R&R explained that subsection (a)(2) may indeed provide a broader grant of substantive rulemaking authority than subsection (g)(1) in at least some circumstances. But the Court agrees that here, the Rule complies with both subsections, so "this case does not require [the Court] to untangle exactly how far subsection [(a)(2)] reaches." *Bondi v. VanDerStok*, 604 U.S. 458, 473 (2025). Plaintiffs' arguments on surplusage are similarly off base. The Court "well prefer[s the] ordinary meaning" of (a)(2) over "an unusual meaning that [may] avoid surplusage." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176 (2012). Put differently, the Court "respects the words of Congress," *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004), as did the R&R's analysis of § 5318(a)(2), with which the Court agrees.

Lastly, Plaintiffs argue that the Rule violates various provisions of 31 U.S.C. § 5326, which authorizes the Secretary to establish geographically constrained, limited-duration reporting requirements known as Residential Real Estate Geographic Targeting Orders ("**GTOs**"). Plaintiffs are correct that the R&R "does not explain why [the Rule] may disregard the limits on GTOs, especially given the major questions doctrine." (Doc. 85 at 5). Perhaps the R&R omitted such an explanation because Plaintiffs' Motion omitted any

6

argument that § 5326 constrained the Secretary's rulemaking authority under § 5318. And while Plaintiffs approached the issue at oral argument before Magistrate Judge Horovitz, even there, they merely argued that the limits imposed in § 5326 lent credibility to their preferred interpretation of § 5318, not that the former hamstrings the latter. (Doc. 81 at 11:1–9). At this stage, the Court "has discretion to decline to consider [Plaintiffs'] argument [because the] argument was not first presented to the magistrate judge." *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009). Nevertheless, little consideration is warranted. Plaintiffs provide no basis for their assertion that the limitations first put on GTOs by the 100th Congress constrain independent authorities delegated to the Secretary in a completely different section of Title 31 by a collection of other Congresses. (*See* Doc. 31, ¶¶ 9–16, 25, 35–38; Doc. 81 at 111:17–112:4).

Nor do Plaintiffs fully explain why the major questions doctrine even applies here. As an initial matter, the Court is skeptical that Defendants are "assert[ing] . . . extravagant statutory power over the national economy." *West Virginia v. EPA*, 597 U.S. 697, 724 (2022) (quotation omitted). The projected economic impact of the Rule pales in comparison to that of most administrative acts set aside under a major questions analysis.[2] Moreover, Defendants' interpretation of § 5318 does not grant "unlimited power

---

[2] *Compare West Virginia*, 597 U.S. at 746 (Gorsuch, J., concurring) ("[I]ndustry analysts have estimated the CPP would cause consumers' electricity costs to rise by over $200 billion."), *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321–22 (2014) (noting that the EPA predicted that "collectively the newly covered sources would face permitting costs of $147 billion"), *King v. Burwell*, 576 U.S. 473, 485 (2015) ("The tax credits are among the Act's key reforms, involving billions of dollars in spending each year and affecting the price of health insurance for millions of people."), *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 764 (2021) ("[B]etween 6 and 17 million tenants at risk of eviction[ fall] within the moratorium. While the parties dispute the financial burden on landlords, Congress has provided nearly $50 billion in emergency rental assistance—a reasonable proxy of the moratorium's economic impact." (citation omitted)), *and Biden v.*

to the Secretary." *Biden v. Nebraska*, 600 U.S. 477, 501 (2023).  And the Secretary's more modest power to impose reporting requirements is, though broader under the Rule than in some previous iterations, far from "unheralded." *Id.* at 519 (Barrett, J., concurring) (quotation omitted); *see also Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 57–70 (1974) (approving of reporting requirements promulgated under separate section of BSA); (Doc. 31, ¶¶ 32, 48 (describing GTO requirements implemented under the BSA since 2016)). Granting, however, that the Rule will have significant economic impacts, and acknowledging that past reporting regulations have been promulgated under different sections of the BSA, the ordinary tools of construction nonetheless reveal that the Rule fits comfortably within the statutory constraints of § 5318.  Indeed, with respect to Defendants' authority to impose the reporting requirements at issue here, Congress "sp[oke] clearly" several times over, as demonstrated in the R&R. *Biden*, 600 U.S. at 507. First, by authorizing the Secretary to "require any financial institution . . . to report any suspicious transaction relevant to a possible violation of law or regulation." 31 U.S.C. § 5318(g)(1).  Second, by authorizing the Secretary to "require a class of domestic financial institutions or nonfinancial . . . businesses to . . . collect[] and report[] . . . certain information as the Secretary of the Treasury may prescribe by regulation." *Id.* § 5318(a)(2).   And   third,   by   demanding   that   the   Secretary   "establish

---

*Nebraska*, 600 U.S. 477, 502 (2023) ("A budget model issued by the Wharton School of the University of Pennsylvania estimates that the program will cost taxpayers between $469 billion and $519 billion, depending on the total number of borrowers ultimately covered." (quotation omitted)), *with* (Doc. 31, ¶¶ 71–72 (estimating the Rule's yearly compliance costs at roughly $ 550 million)). *But see Health Freedom Def. Fund, Inc. v. Biden*, 599 F. Supp. 3d 1144, 1165 (M.D. Fla. 2022) ("[T]he [Mask] Mandate is likely to have either an annual effect of $100 million or more on the economy, a major increase in consumer prices, or significant adverse effects on the economy.").

8

streamlined . . . processes to . . . permit the filing of noncomplex categories of reports" relating "to suspicious transactions relevant to potential violations of law."  *Id.* § 5318(g)(5)(D)(i)(I), (ii)(I).  *Cf. Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 679 (2020) (approving rule "clearly allow[ed]" by the "plain language" of an "extraordinarily broad [Congressional] directive" (quotation omitted)).  Thus, Plaintiffs' invocation of the major questions doctrine fails to sway the Court, and Plaintiffs' objections will be overruled insofar as they contend that Defendants lack authority to make and enforce the Rule.

### B. Arbitrary and Capricious Review

Plaintiffs argue that Magistrate Judge Horovitz erred in his arbitrary and capricious review, either by declining to independently consider whether the Rule is supported by substantial evidence, or by failing to include a substantial evidence analysis within his arbitrary and capricious review, or perhaps, by simply considering impermissible sources of evidence.  Nailing down the Parties' exact position on the applicable standard of review for FinCEN's informal rulemaking proved difficult from the inception of this case, though Defendants have since provided clarity.  (*See generally* Doc. 78).  For a time, so did Plaintiffs—at oral argument, Plaintiffs appeared to concede that substantial evidence review was inapplicable here.  (Doc. 81 at 117:9–20 (agreeing to statement that "if the rule is not arbitrary and capricious, substantial evidence can't come in and backdoor in some additional requirement to invalidate a rule"); *id.* at 117:22–24 (stating that "[the Rule] is either arbitrary and capricious or it's not" and that "[s]ubstantial evidence . . . [does not] do any additional work here"); *id.* at 126:12–127:12 (agreeing to statement that "the substantial evidence standard is only applicable in fact-finding decisions")).

Plaintiffs now argue that FinCEN's rulemaking process must be subjected to substantial evidence review and that—though they argue the two standards are functionally the same—the R&R failed to conduct it. Indeed, the standards do overlap significantly. *See Mendoza v. Sec'y, Dep't of Homeland Sec.*, 851 F.3d 1348, 1353 (11th Cir. 2017). Yet Magistrate Judge Horovitz correctly conducted arbitrary and capricious review, as the Rule was adopted pursuant to notice-and-comment rulemaking, and "the APA itself makes the substantial-evidence standard applicable in [challenges to] only . . . 'formal' agency action[s]." *Lopez-Martinez v. U.S. Att'y Gen.*, 149 F.4th 1202, 1207 (11th Cir. 2025) (citing 5 U.S.C. § 706(2)(E)). And in agreeing with the R&R's standard of review, the Court declines to reconsider Plaintiffs' recycled arguments on the sufficiency and admissibility of the evidence that underlined it. Nor will the Court reanalyze Plaintiffs' arguments on Defendants' cost-benefit analysis and consideration of comments with respect to the Rule. Plaintiffs' objections reraise arguments presented in their briefs and considered in the R&R—at this point, Plaintiffs "simply disagree with the magistrate judge's conclusions." *Miers v. United States*, No. 1:19-cv-20740, 2022 WL 831152, at *3 (S.D. Fla. Mar. 21, 2022). The Court does not. After an independent de novo review of the record, Plaintiffs' objections pertaining to arbitrary and capricious review will be overruled.

**C. The Fourth Amendment**

Lastly, Plaintiffs argue that the Rule violates the Fourth Amendment under *California Bankers Association v. Shultz*, which they contend was misread in the R&R. Whereas *Shultz* requires compulsory reporting requirements to be "reasonably relevant" to the improper transactions they target, 416 U.S. at 67, Plaintiffs claim that the Rule

targets too broad a class of transactions without any evidence of wrongdoing. *Shultz*'s relevancy constraints, however, are no tighter than those already imposed by 31 U.S.C. § 5318(g)(1), (5)(D)(ii)(I), which authorize the Secretary to require the reporting of suspicious transactions so long as they are "relevant to" possible violations of law or regulations. Indeed, the domestic regulations at issue in *Shultz*—which targeted a class of transactions without requiring any individualized assessment—swiftly passed Fourth Amendment scrutiny despite having no statutorily prescribed nexus to possible violations of law.[3] Even after assuming that "the regulations [in *Shultz*] require[d banks] to obtain information from a customer simply because the Government want[ed] it," the Court there had "no difficulty" finding the Fourth Amendment satisfied because the regulations were "within the authority of the agency, the demand [wa]s not too indefinite and the information sought [wa]s reasonably relevant." 416 U.S. at 66–67 (quotation omitted). Given, therefore, that this Court has already found that the Rule falls within FinCEN's more onerous statutory constraints, *Shultz* cannot backdoor-in a Fourth Amendment violation. *Cf. Nat'l Small Bus. United v. U.S. Dep't of the Treasury*, 161 F.4th 1323, 1334 (11th Cir.

---

[3] At issue in *Shultz* was the original Bank Secrecy Act, Pub. L. 91-508, 84 Stat. 1114 (1970). The Court acknowledges that the stated purpose of the Act was to "require the . . . making of appropriate reports by [] businesses . . . where such records or reports have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings." *Id.* § 121(b), 84 Stat. at 1116. In furtherance of that purpose, however, § 221 of the Act simply authorized the Secretary of the Treasury to require, "at such time, in such manner, and in such detail as the Secretary may [choose]," the reporting of "[t]ransactions involving any domestic financial institution . . . if they involve the payment, receipt, or transfer of United States currency, or such other monetary instruments as the Secretary may specify, in such amounts, denominations, or both, or under such circumstances, as the Secretary shall by regulation prescribe." *Id.* § 221, 84 Stat. at 1122. "While an Act conferring such broad authority over transactions such as these might well [have] surprise[d] or even shock[ed] those who lived in an earlier era," the *Shultz* Court found "nothing in the Act which violate[d] the Fourth Amendment rights of any . . . plaintiffs." 416 U.S. at 30, 52.

2025) (rejecting similar Fourth Amendment argument where the "information [] require[d was sufficiently described and limited in nature and [wa]s no more detailed than the reports in *Shultz*." (quotation omitted)). After all, "corporations can claim no equality with individuals in the enjoyment of a right to privacy. . . . Even if one were to regard the request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest." *Shultz*, 416 U.S. at 65–66 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)). Plaintiffs' Fourth Amendment objections will be overruled accordingly.

## IV.  CONCLUSION

Therefore, it is **ORDERED** and **ADJUDGED** as follows:

1. Plaintiffs' Request for Oral Argument on Plaintiffs' Objections to the Magistrate Judge's Report and Recommendation (Doc. 86) is **DENIED** and Plaintiff's Objections (Doc. 85) are **OVERRULED**.

2. The Report and Recommendation (Doc. 82) is **ADOPTED** and **CONFIRMED** and made a part of this Order.

3. Plaintiffs' Motion for Summary Judgment (Doc. 35) is **DENIED**.

4. Defendants' Cross-Motion for Summary Judgment (Doc. 64) is **GRANTED**.

5. Plaintiffs' Motion for Stay or Preliminary Injunction (Doc. 36) is **DENIED as moot**.

6. The Clerk is directed to enter judgment in favor of Defendants and against Plaintiffs. Thereafter, the Clerk is directed to terminate all pending motions and close this case.

**DONE AND ORDERED** in Jacksonville, Florida on February 19, 2026.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record